Mr. H. Hamilton Rice, Jr. Manatee County Attorney Post Office Box 1000 Bradenton, Florida 34206-1000
Dear Mr. Rice:
You ask substantially the following question:
May a county adopt an ordinance that regulates the sulfur content of fuel burned at an existing power plant such that the ordinance is binding on the Siting Board in its consideration of an application for such plant under the Electrical Power Plant Siting Act?
In sum:
The county may adopt an ordinance that regulates the content of fuel burned at a power plant located within its jurisdiction as a nonprocedural requirement to be considered by the Siting Board in its review of an application for an existing plant under the Electrical Power Plant Siting Act.
You state that the Manatee County Board of County Commissioners has adopted an ordinance limiting the sulfur content of fuels to be burned by power plant operators within the county to no more than one percent. You ask whether this ordinance is binding on the Siting Board (board) when it considers an application for certification under the Florida Electrical Power Plant Siting Act (the act).[1]
Section 403.502, Florida Statutes, sets forth the Legislature's intent in passing the Electrical Power Plant Siting Act, stating:
"The Legislature finds that the efficiency of the permit application and review process at both the state and local level would be improved with the implementation of a process whereby apermit application would be centrally coordinated and all permitdecisions could be reviewed on the basis of standards andrecommendations of the deciding agencies. . . . [W]hile recognizing the pressing need for increased power generation facilities, the state shall ensure through available and reasonable methods that the location and operation of electrical power plants will produce minimal adverse effects on human health, the environment, the ecology of the land and its wildlife, and the ecology of state waters and their aquatic life and will not unduly conflict with the goals established by the applicable local comprehensive plans. . . . Such action will be based on these premises:
(1) To assure the citizens of Florida that operation safeguards are technically sufficient for their welfare and protection.
(2) To effect a reasonable balance between the need for the facility and the environmental impact resulting from construction and operation of the facility, including air and water quality, fish and wildlife, and the water resources and other natural resources of the state.
(3) To meet the need for electrical energy as established pursuant to s. 403.519." (e.s.)
The act, therefore, creates a "one-step" procedural process for the review of permit applications based on the substantive requirements and recommendations of deciding agencies. For purposes of the act, a deciding agency includes a local governmental entity such as the county.[2]
The act leaves the area of substantive regulation to local and state agencies within whose jurisdiction the electrical power plant is located.[3] For example, section 403.507(2)(a)4., Florida Statutes (1996 Supplement), states that each local government in whose jurisdiction a proposed electrical power plant is to be located must report on the consistency of the proposed plant with all applicable local ordinances, regulations, standards, or criteria, including "adopted local comprehensive plans, land development regulations, and any applicable local environmental regulations. . . ."[4]
With regard to certification of application for an existing electrical power plant site, section 403.5175, Florida Statutes, provides that an electric utility that owns or operates an existing power plant may apply for certification in order to obtain all agency licenses necessary to comply with federal or state environmental laws using the centrally coordinated licensing process established in the act. The application for certification must include a description of the site and the existing plant and the proposed changes; a description of the environmental and other impacts caused by the existing use of the site and operation of the plant, and other benefits to be realized as a result of the proposed changes if certification is approved; the justification for these changes; and copies of all existing permits, licenses, and compliance plans for the site or operation of the power plant that is the subject of the application.[5]
In determining whether an application submitted under section403.5175(4), Florida Statutes, should be approved in whole, approved with appropriate conditions, or denied, the Siting Board
"shall consider whether, and to the extent to which the proposed changes to the electrical power plant and its continued operation under certification will:
(a) Comply with applicable nonprocedural requirements of agencies;
(b) Result in environmental or other benefits compared to current utilization of the site and operations of the electrical power plant if the proposed changes or alterations are undertaken;
(c) Minimize, through the use of reasonable and available methods, the adverse effects on human health, the environment, and the ecology of the land and its wildlife and the ecology of state waters and their aquatic life; and
(d) Serve and protect the broad interests of the public." (e.s.)
Thus, in considering whether an application should be approved, the board shall consider whether applicable nonprocedural requirements of an affected agency are met. The act defines "[n]onprocedural requirements of agencies" to mean "any agency'sregulatory requirements established by statute, rule, ordinance, or comprehensive plan, excluding any provisions prescribing forms, fees, procedures, or time limits for the review or processing of information submitted to demonstrate compliance with such regulatory requirements."[6] (e.s.) Thus, the act clearly contemplates that a local government such as the county may impose substantive regulatory requirements will be considered by the Siting Board in reviewing the application for certification of changes to an existing electrical power plant.[7]
Section 403.5175, Florida Statutes, therefore, requires that the Siting Board consider a local ordinance regulating the content of fuel burned at a power plant within the local government's jurisdiction while reviewing an application under the Electrical Power Plant Siting Act. The board, however, may approve an application "with appropriate conditions," provided that any conditions that constitute exceptions to state or local nonprocedural requirements comply with the provisions of section403.5175(4)(b)-(d), set forth above. Moreover, as discussed above, the act creates a "one-step" procedural process for the review of permit applications based on the substantive requirements and recommendations of deciding agencies; any deviation from those substantive requirements and recommendations, therefore, should only be made only after careful consideration.
Accordingly, it is my opinion that the county may adopt an ordinance regulating the content of fuel burned at a power plant located within its jurisdiction which shall be considered by the Siting Board in its review of an application for certification under the Electrical Power Plant Siting Act.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tall
[1] Sections 403.501-403.518, Fla. Stat.
[2] See, s. 403.502 and s. 403.503(2), Fla. Stat. (1996 Supp.), defining "[a]gency."
[3] See, s. 403.507(1), Fla. Stat. (1996 Supp.), providing that each affected agency identified in paragraph (2)(a) must submit a preliminary statement of issues to the department and the applicant.
[4] Section 403.507(2)(a), Fla. Stat., also requires that the following agencies prepare reports to be submitted to the Department of Environmental Protection regarding the power plant application: Department of Community Affairs; Public Service Commission; any affected water management district; Game and Fresh Water Fish Commission; and any other agency that may be affected by the proposed plant, if requested by the Department of Environmental Protection.
[5] Section 403.5175(2), Fla. Stat.
[6] Section 403.503(18), Fla. Stat. (1996 Supp.).
[7] See, s. 403.5116, Fla. Stat., providing that "[e]xcept as provided in ss. 403.510 and 403.511, nothing in chapter 75-22, Laws of Florida [Florida Electrical Power Plant Siting Act], shall be construed to have altered the authority of county and municipal governments as provided by law. And see, s. 125.01(1)(j), Fla. Stat. (1996 Supp.), authorizing county governments to establish and administer programs for air pollution control.